■ In the Matter of KIM PARISH, Petitioner, v THOMAS P. DiNAPOLI, as Comptroller of the State of New York, Respondent. [934 NYS2d 516]—

Malone Jr., J.

Petitioner, a correction officer, was injured in April 1999 when she slipped on a floor that had just been waxed by an inmate. She returned to work but was apparently injured again in May 2004 and has apparently not worked thereafter. She was last paid by her employer on December 1, 2005 and was subsequently placed on leave without pay. On July 25, 2006, petitioner applied for disability retirement benefits pursuant to Retirement and Social Security Law article 15, based upon her April 1999 injury. In September 2007, petitioner also applied for performance of duty disability retirement benefits related to the April 1999 injury. Both applications were initially denied, and petitioner requested a hearing and redetermination. Following hearings, the Hearing Officer upheld the denial of the applications, finding that the application for disability retirement benefits was not timely filed and that petitioner was not eligible for performance of duty disability benefits due to the fact that her injury was not the result of a direct act of an inmate. Respondent adopted the findings and conclusions of the Hearing Officer, prompting this CPLR article 78 proceeding.

Pursuant to Retirement and Social Security Law article 15, an application for disability retirement benefits must be filed, as relevant here, "within three months from the last date the member was being paid on the payroll or, . . . in the case of a member who was placed on a leave of absence for medical reasons without pay, either voluntarily or involuntarily, at the time he [or she] ceased being paid, . . . not later than [12] months after the date the employee receives notice that his [or her] employment status has been terminated" (Retirement and Social Security Law § 605 [b] [2]). Here, petitioner applied for disability retirement benefits in July 2006, which was beyond three months from the date she was last paid in December 2005.

Further, the extended time limitations pertaining to applicants who were placed on a medical leave of absence are inapplicable here, as petitioner testified that she was never placed on a medical leave of absence.

Finally, contrary to petitioner's contention, the fact that she was awarded workers' compensation benefits does not make her application timely. Petitioner relies on the New York State and Local Retirement System's published guidelines, which allow that an application for disability retirement benefits may be filed within "12 months after receiving notification of termination of employment, provided [the applicant was] on an authorized medical leave of absence or receiving [w]orkers' [c]ompensation benefits." Here, petitioner was found to be permanently partially disabled in 2009 and was awarded workers' compensation benefits for lost time beginning in July 2005, with intermittent breaks in compensation, with the benefits apportioned between the April 1999 injury, an injury sustained in December 1999 and the May 2004 injury. It is undisputed, however, that petitioner's employment had not been terminated at the time of her application, nor does the record contain any evidence that her employment has been terminated subsequent to her application. Accordingly, the 12-month time limitation relative to a notice of termination is not applicable here. Inasmuch as petitioner did not file her application within three months of last being paid by her employer, we find that respondent's determination that petitioner's application for disability retirement benefits was untimely is supported by substantial evidence.

Regarding the application for performance of duty disability retirement benefits, petitioner "bore the burden of demonstrating that [her] injuries were the natural and proximate result of an act of an inmate" (*Matter of Koziuk v New York State Comptroller*, 78 AD3d 1458, 1459 [2010]; *see* Retirement and Social Security Law § 607-c [a]). The phrase "act of an inmate" is not defined in Retirement and Social Security Law § 607-c, which provides the added protection of performance of duty disability retirement benefits to county-employed correction officers (*see* Retirement and Social Security Law § 607-c [a]). We have recently held, however, that the phrase "act of an inmate" as used in Retirement and Social Security Law § 507-b—which provides performance of duty disability retirement benefits for correction officers employed by the Department of Corrections and Community Supervision (*see* Retirement and Social Security Law § 507-b [a])—does not include "a benign chore routinely performed in penal institutions by inmates" (*Matter*

*of Kaler v DiNapoli*, 86 AD3d 898, 899 [2011]). Clearly, the Legislature intended that Retirement and Social Security Law § 607-c provide the same benefits to county employees, who serve in the same capacity and face the same dangers resulting from increased altercations among inmates and between inmates and correction officers, as those provided by Retirement and Social Security Law § 507-b (*see* Senate Mem in Support, 1999 McKinney's Session Laws of NY, at 2015-2016). Accordingly, inasmuch as the Legislature did not intend for routine chores performed by inmates to trigger the added protection afforded to correction officers (*see Matter of Kaler v DiNapoli*, 86 AD3d at 899), we find that the waxing of a floor does not constitute an act of an inmate for the purposes of awarding performance of duty disability retirement benefits pursuant to Retirement and Social Security Law § 607-c.

Mercure, J.P., Spain, Lahtinen and Egan Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.