*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  March 12, 2015                    519474
_____

In the Matter SCOTT NAUGHTON,
                    Petitioner,

            v                                    OPINION AND JUDGMENT

THOMAS P. DiNAPOLI, as State
    Comptroller, et al.,
                    Respondents.
_____


Calendar Date:  January 14, 2015

Before:  Peters, P.J., McCarthy, Garry and Rose, JJ.

_____


        Sherman, Federman, Sambur & McIntyre, New York City (Sean
Patrick Riordan of counsel), for petitioner.

        Eric T. Schneiderman, Attorney General, Albany (William E.
Storrs of counsel), for respondents.

_____


Peters, P.J.

        Proceeding pursuant to CPLR article 78 (transferred to this
Court by order of the Supreme Court, entered in Albany County) to
review a determination of respondent Comptroller which denied
petitioner's application for performance of duty disability
retirement benefits.

        Petitioner, a correction officer, applied for performance
of duty disability retirement benefits alleging that he was
permanently incapacitated due to a work-related injury to his
right knee.  The application was initially denied and petitioner
requested a hearing and redetermination.  At the ensuing hearing,
petitioner testified that he injured his knee while involved in a
struggle to restrain an unruly inmate who had threatened another

officer. According to petitioner's testimony, he and the other officer were in the process of taking the inmate down to the floor when he felt pain in his knee. In contrast, petitioner signed a written report on the day of the incident that stated that, after the other officer had taken down and restrained the inmate, who had stopped resisting, he injured his knee when he slipped as he was placing shackles on the inmate's legs. Crediting the description of the incident in the written report over petitioner's testimony, the Hearing Officer found that petitioner failed to establish that his injury was the result of an act of an inmate and upheld the denial of the application. Respondent Comptroller adopted that determination, with supplemental conclusions of law, and this CPLR article 78 proceeding ensued.

Upon our review, we are mindful "that inconsistencies between a petitioner's sworn testimony and written documents present a credibility issue for the factfinder to resolve" (Matter of Stimmer v DiNapoli, 98 AD3d 1216, 1217 [2012]; see Matter of Ferguson v DiNapoli, 114 AD3d 1015, 1016 [2014], lv denied 23 NY3d 901 [2014]). Thus, we defer to the Hearing Officer's decision to credit the account of the incident set forth in the contemporaneous written report over that testified to by petitioner during the hearing. Yet, even accepting as true the version of the event contained in the written report, the record lacks substantial evidence to support the determination that petitioner's injury was not "the natural and proximate result of any act of any inmate" (Retirement and Social Security Law § 607-c [a]).

Retirement and Social Security Law § 607-c (a) provides, in pertinent part, that performance of duty disability retirement benefits shall be available to a correction officer "who becomes physically or mentally incapacitated for the performance of duties . . . by, or as the natural and proximate result of[,] any act of any inmate" (emphasis added). As we have repeatedly held, the statute requires "that the petitioner demonstrate that his or her injuries were caused by direct interaction with an inmate" (Matter of Perry v DiNapoli, 88 AD3d 1047, 1048 [2011] [internal quotation marks and citation omitted]; see Matter of Palmateer v DiNapoli, 117 AD3d 1228, 1229 [2014], lv denied 24 NY3d 901

[2014]; <u>Matter of White v DiNapoli</u>, 94 AD3d 1290, 1290 [2012]; <u>Matter of Koziuk v New York State Comptroller</u>, 78 AD3d 1458, 1459 [2010]).

Here, even accepting the version of the incident set forth in the written reports, we find that such direct interaction was present. Petitioner was injured while attempting to shackle an inmate who, just seconds earlier, had been taken down to the ground after violently threatening another correction officer.[1] While respondents place great emphasis on the fact that, according to the written report, the inmate had stopped resisting when petitioner proceeded to shackle him, this is not a situation where "any connection between the inmate's actions and petitioner's injury was too attenuated to afford coverage under the statute" (<u>Matter of Allesandro v DiNapoli</u>, 68 AD3d 1592, 1594 [2009], <u>lv denied</u> 14 NY3d 705 [2010]; <u>compare</u> <u>Matter of Palmateer v DiNapoli</u>, 117 AD3d at 1230 [rejecting the petitioner's contention that, inasmuch as he injured his knee while leaving his desk to respond to a potential emergency involving inmates, his injuries were the natural and proximate result of an act of an inmate]; <u>Matter of Davis v DiNapoli</u>, 56 AD3d 933, 934 [2008] [finding that the petitioner's injuries were not a natural and proximate result of an act of an inmate where the petitioner injured his neck when he "abruptly" stood to answer a phone call signaling a potential altercation among inmates]; <u>Matter of Egiziaco v Office of Comptroller of State of N.Y.</u>, 15 AD3d 747, 748 [2005] [finding that a correction officer who slipped on ice in a parking lot while transporting the paperwork of inmates who had applied for furloughs was not injured as a natural and proximate result of an act of an inmate]; <u>Matter of Escalera v Hevesi</u>, 9 AD3d 666, 667 [2004], <u>lv denied</u> 3 NY3d 608 [2004] [rejecting the petitioners' claim that the psychological injuries

---

[1] In its determination, which was adopted by the Comptroller, the Hearing Officer erroneously found that "[petitioner] simply injured himself when he slipped <u>after</u> placing shackles on the inmate's feet" (emphasis added). Neither the testimony at the hearing nor any of the documentary evidence supports a finding that petitioner was injured <u>after</u> he had shackled the inmate.

they allegedly suffered as a result of the arrests, suspensions, negative publicity, trials and hearings that occurred following certain inmates' accusations of sexual abuse were a proximate and natural result of an act of an inmate]). To the contrary, the injury producing event here – the shackling of the inmate – occurred contemporaneously with, and flowed directly, naturally and proximately from, the inmate's unruly and combative behavior toward the other officer and his resistance to being restrained. Under these circumstances, there is simply no evidentiary basis in the record to conclude that petitioner's injury was not the natural and proximate result of an act of an inmate (see Retirement and Social Security Law § 607-c [a]).

Moreover, it is clear that the act of restraining a combative and unruly inmate is precisely the type of activity that was intended to trigger the protections afforded correction officers by Retirement and Social Security Law § 607-c. The legislative justification for the enactment of both Retirement and Social Security Law §§ 507-b and 607-c – which provide performance of duty disability retirement benefits to correction officers employed by the Department of Corrections and Community Supervision and county-employed correction officers, respectively – was that "the increased inmate population of the state's prison system created strain and tension, manifesting itself in an increase in altercations among inmates and between inmates and correction officers" (Matter of Kaler v DiNapoli, 86 AD3d 898, 899 [2011], lv denied 18 NY3d 808 [2012]; see Matter of Parish v DiNapoli, 89 AD3d 1315, 1316-1317 [2011]; Senate Mem in Support, 1999 McKinney's Session Laws of NY, at 2015-2016; Assembly Mem in Support, 1996 McKinney's Session Laws of NY, at 2655-2656). The Legislature recognized that county-employed correction officers, like those employed by the state, "serve in one of the most dangerous aspects of the criminal justice system" and "are constantly exposed to violence [and] assault" when called upon to "arrest, detain, transport and house convicted criminals" (Assembly Mem in Support, Bill Jacket, L 1999, ch 639 at 5). The statutes were thus "clearly intended to compensate correction officers who, because of the risks created by their 'daily contact with certain persons who are dangerous [and] profoundly antisocial'" (Matter of Kaler v DiNapoli, 86 AD3d at 899, quoting Governor's Mem approving L 1996, ch 722, 1996 McKinney's Session

Laws of NY, at 1943; see Senate Mem in Support, 1999 McKinney's Session Laws of NY, at 2015-2016), become permanently disabled as a natural and proximate result of an act of an inmate (see Retirement and Social Security Law §§ 507-b [a]; 607-c [a]).  The process of restraining an unruly inmate – irrespective of whether such inmate momentarily stops resisting – presents the very risks and dangers contemplated by the Legislature in providing correction officers with the added protections contained in Retirement and Social Security Law § 607-c.

Having determined that petitioner's injury was a natural and proximate result of an act of an inmate, the matter must be remitted for further proceedings on the issue of the permanency of petitioner's alleged disability (see Retirement and Social Security Law § 607-c [a]).

McCarthy, Garry and Rose, JJ., concur.

ADJUDGED that the determination is annulled, without costs, petition granted to that extent, and matter remitted to respondent Comptroller for further proceedings not inconsistent with this Court's decision.

ENTER:

Robert D. Mayberger
Clerk of the Court