■ In the Matter of ISAAC WHITE, Petitioner, v THOMAS P. DINAPOLI, as State Comptroller, Respondent. [61 NYS3d 171]—

Aarons, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for performance of duty disability retirement benefits.

Petitioner, a correction officer, applied for performance of duty disability retirement benefits (*see* Retirement and Social Security Law § 607-c) alleging that he was permanently incapacitated due to work-related injuries to his back as a result of an act of an inmate on July 25, 1992. The application for

benefits was initially denied upon the ground that the act of the inmate was not the natural and proximate cause of petitioner's disability. Petitioner requested a hearing and redetermination, and, following a hearing, a Hearing Officer upheld the denial of the application.* Respondent accepted the findings and conclusions of the Hearing Officer, and this CPLR article 78 proceeding ensued.

We confirm. To be eligible for performance of duty disability retirement benefits, petitioner bore the burden of demonstrating that his physical or mental incapacitation was "the natural and proximate result of any act of any inmate" (Retirement and Social Security Law § 607-c [a]; see Matter of Traxler v DiNapoli, 139 AD3d 1314, 1314 [2016]; Matter of Naughton v DiNapoli, 127 AD3d 137, 139 [2015]). "We have repeatedly held that the statute requires that the petitioner demonstrate that his or her injuries were caused by direct interaction with an inmate" (Matter of Traxler v DiNapoli, 139 AD3d at 1314 [internal quotation marks and citations omitted]; see Matter of DeMaio v DiNapoli, 137 AD3d 1545, 1546 [2016]; Matter of Palmateer v DiNapoli, 117 AD3d 1228, 1229 [2014], lv denied 24 NY3d 901 [2014]). "Where . . . there is conflicting medical evidence, [respondent] is authorized to resolve the conflicts and to credit one expert's opinion over that of another so long as the credited expert articulates a rational and fact-based opinion founded upon a physical examination and review of the pertinent medical records" (Matter of Chomicki v Nitido, 145 AD3d 1337, 1338 [2016] [internal quotation marks and citations omitted]; see Matter of Ortiz v DiNapoli, 98 AD3d 1224, 1225 [2012]).

Petitioner, who started working as a correction officer in 1988, testified that in 1992, he injured his back while restraining a noncompliant inmate who was involved in a physical altercation with another inmate. After receiving medical care and not working for approximately 15 days as a result of his injury, petitioner returned to work and performed light-duty work for the year following the incident. Thereafter, petitioner reinjured his back in 1993 while performing yard work and again in 1995 when he fell down stairs while exiting a building resulting in lost work time of 40 days. Petitioner also periodi-

---

* During the hearing, the New York State and Local Police and Fire Retirement System conceded that the incident on July 25, 1992 was an act of an inmate and that petitioner is permanently incapacitated and unable to perform the duties of a correction officer. Thus, the sole issue before the Hearing Officer was whether petitioner's disability was the natural and proximate result of the inmate's actions (see Retirement and Social Security Law § 607-c [a]).

cally missed time from work due to his back for about 10 to 30 days each year in 2001, 2002, 2003, 2005, 2007 and 2009. Marc Habif, a chiropractor who first examined and began treating petitioner in 2007 and who reviewed petitioner's MRI report from 1993, testified that the 1992 injury was responsible for the disabling condition of petitioner's lumbar spine, which was exacerbated by the 1995 injury.

Bradley Wiener, an orthopedic surgeon who examined petitioner at the request of the New York State Police and Fire Retirement System in December 2012 and reviewed petitioner's medical history, diagnosed petitioner with a lumbosacral strain injury with exacerbation of degenerative disc disease, lumbosacral spine with progressive degenerative disc disease and mechanical axial dysfunction of the lumbosacral spine. In stark contrast to the view offered by Habif, Wiener testified that, while petitioner was disabled and not able to work full time as a correction officer, petitioner's disability was not the natural and proximate result of the injuries that petitioner sustained in 1992. Wiener explained that petitioner's disability stems from not only the degenerative condition in his back, but also from his disabling conditions in his knees and shoulder, as well as from non-work injuries to his lumbar spine. Significantly, Wiener noted that, based upon his review of petitioner's medical records, petitioner started having back pain as early as 1981 and that, notwithstanding his 1992 injury, petitioner returned to work without restriction for over 15 years and was working without restriction when he was injured in 1995. To that end, Wiener indicated that the 1992 soft-tissue injury had resolved itself but that injuries sustained subsequent to the 1992 injury, including non-work injuries, caused the degenerative condition in his lumbar spine to progress. Inasmuch as the record contains conflicting medical evidence, respondent was entitled to weigh that evidence and credit the medical opinion of Wiener, which was based upon a physical examination of petitioner and a review of his medical records, and, therefore, respondent's determination that petitioner's 1992 injury was not the natural and proximate cause of his disability is supported by substantial evidence and will not be disturbed (see Matter of Chomicki v Nitido, 145 AD3d at 1338-1339; Matter of Hunt v DiNapoli, 93 AD3d 1017, 1018 [2012]; compare Matter of Andrus v DiNapoli, 114 AD3d 1078, 1079-1080 [2014]).

Egan Jr., J.P., Lynch, Devine and Clark, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.