Matter of Echevarria v DiNapoli (2019 NY Slip Op 02195)





Matter of Echevarria v DiNapoli


2019 NY Slip Op 02195


Decided on March 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 21, 2019

527169

[*1]In the Matter of JESUS ECHEVARRIA, Petitioner,
v
THOMAS P. DiNAPOLI, as State Comptroller, Respondent.

Calendar Date: February 15, 2019

Before: Egan Jr., J.P., Clark, Mulvey, Devine and Aarons, JJ.


Bartlett LLP, White Plains (Michael Catallo of counsel), for petitioner.
Letitia James, Attorney General, Albany (William E. Storrs of counsel), for respondent.



MEMORANDUM AND JUDGMENT
Clark, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for performance of duty disability retirement benefits.
Petitioner, who most recently was employed as a correction officer, applied for performance of duty disability retirement benefits alleging that he was permanently disabled as the result of incidents that occurred in September 2001, January 2006, February 2007 and January 2010. Petitioner's application was denied upon various grounds, and he requested a hearing and redetermination. At the hearing that followed, petitioner conceded that the 2006, 2007 and 2010 incidents did not constitute the act of an inmate; the New York State and Local Employees' Retirement System, in turn, conceded that petitioner was permanently disabled as the result of the 2001 incident and that such incident constituted the act of an inmate. Hence, the only contested issue was whether petitioner's permanent incapacitation was the natural and proximate result of the 2001 incident, which involved injuries to petitioner's left knee.
Following testimony from petitioner's treating orthopedic surgeon, Charles Episalla, and the Retirement System's expert, Louis Nunez, a Hearing Officer upheld the denial, finding that petitioner failed to meet his burden of proof as to the 2001 incident. Respondent adopted the Hearing Officer's decision, prompting petitioner to commence a CPLR article 78 proceeding to challenge respondent's determination. Upon review, this Court annulled respondent's determination — finding that the Hearing Officer applied the incorrect legal standard in rendering his decision — and remanded the matter for further proceedings (Matter of Echevarria v DiNapoli, 145 AD3d 1310 [2016]). The matter then was reassigned to a new Hearing Officer who, after reviewing the prior hearing transcript and exhibits, upheld the denial of petitioner's application for benefits, finding that petitioner failed to establish that his disability was the natural and [*2]proximate result of the injuries sustained to his left knee during the 2001 incident. Respondent adopted the Hearing Officer's decision, prompting petitioner to commence this proceeding to challenge respondent's determination.
We confirm. Given the Retirement System's concessions, petitioner's burden distilled to demonstrating that his disabling left knee condition was the "natural and proximate result" of the 2001 incident (Retirement and Social Security Law § 507-b [a]; see Matter of Iovino v DiNapoli, 162 AD3d 1447, 1448 [2018]; Matter of Molloy v DiNapoli, 144 AD3d 1369, 1369 [2016]; Matter of Andrus v DiNapoli, 114 AD3d 1078, 1079 [2014]). In this regard, "[respondent] has the exclusive authority to resolve conflicting medical evidence and to credit one expert's opinion over another" (Matter of Dee v DiNapoli, 154 AD3d 1042, 1044 [2017] [internal quotation marks and citations omitted]; see Matter of Donley v DiNapoli, 153 AD3d 1104, 1105 [2017]; Matter of Molloy v DiNapoli, 144 AD3d at 1370), and the resulting determination — if supported by substantial evidence in the record as a whole — will not be disturbed (see Matter of Stevens v DiNapoli, 155 AD3d 1294, 1295 [2017]).
Here, Episalla opined that petitioner's disability was the natural and proximate result of the injuries sustained to his left knee during the 2001 incident. Although Episalla was aware that petitioner underwent a left knee ACL reconstruction in 1995 and that imaging studies taken at that time showed "mild medial joint space narrowing," which "could be normal wear and tear with age," Episalla relied upon petitioner's representation that he was asymptomatic following that surgery. Episalla acknowledged, however, that, as a result of petitioner's subsequent knee injuries in 2007 and 2010 and surgeries in 2011 and 2012, petitioner suffers from arthritis in his left knee — a progressive condition that eventually will require petitioner to undergo a knee replacement. Notably, Episalla did not directly address the impact of petitioner's subsequent knee injuries/surgeries upon his disabling condition, nor did Episalla explain how petitioner could be disabled as the result of the 2001 incident and yet was able to return to full-duty work for a number of years thereafter — despite subsequent and repeated injuries to the same knee.
Nunez, on the other hand, testified that petitioner's disability stemmed from osteoarthritis in his left knee — the "major cause" of which was the 1995 surgery. Indeed, Nunez opined that "the majority of the symptomatology that [petitioner] has regarding the arthritis goes back to [the] previous ACL tear and subsequent reconstruction." Although Nunez acknowledged on cross-examination that the 2001 incident could have aggravated a preexisting condition that, in turn, resulted in petitioner's disabling condition, he also testified that each subsequent injury to petitioner's left knee was a contributing factor, stating, "I cannot give you a specific percentage, but there's no question that each subsequent injury to that left knee would have been a factor in causing [petitioner's] current status."
In finding that petitioner failed to meet his burden of proof as to causation, the Hearing Officer rejected the notion that the 2001 incident aggravated a preexisting condition, thereby causing the resulting disability — a conclusion largely based upon the undisputed fact that petitioner returned to full duty following the 2001 incident (see Matter of White v DiNapoli, 153 AD3d 1080, 1082 [2017]) and, despite additional knee injuries and surgeries in the years that followed, remained employed as a correction officer until his last day of work in June 2010 (compare Matter of Scannella v New York State Comptroller, 119 AD3d 1048, 1049 [2014]; Matter of Andrus v DiNapoli, 114 AD3d at 1079-1080). Additionally, the Hearing Officer relied upon Nunez's opinion regarding the cause of petitioner's disability, i.e., osteoarthritis, and the contributing role that each successive knee injury played therein, as well as Episalla's acknowledgment that arthritis is a progressive condition — some mild evidence of which was visible on the 1995 imaging studies. As the Hearing Officer's conclusions in this regard are supported by substantial evidence, we discern no basis upon which to disturb respondent's denial of petitioner's application for performance of duty disability retirement benefits — "notwithstanding other medical evidence in the record that could support a contrary conclusion" (Matter of Studdert v New York State Comptroller, 163 AD3d 1343, 1346 [2018]).
Egan Jr., J.P., Mulvey, Devine and Aarons, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.